AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

MAR 07 2024

LAURA A. AUSTIN, CLERK
BY: /s/ J. Clark
DEPUTY CLERK

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. 1:24mj17 |
|  | ) |
|  | ) |
| Dillon West Breeding | ) |
|  | ) |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __May 2023 to September 2023__ in the county of __Scott__ in the __Western__ District of __Virginia__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC § 1365 | Tampering with a Drug |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_/s/ O.J. Dobbs_
Complainant's signature

Dustin Dobbs, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 3/7/24

_/s/ Pamela Meade Sargent_
Judge's signature

City and state: Abingdon, VA

Pamela Meade Sargent, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT

1. I, Dustin Dobbs, Special Agent for the Food and Drug Administration, Office of Criminal Investigation ("FDA/OCI"), being duly sworn, depose and state as follows:

2. I am a Special Agent with the FDA/OCI, assigned to the Washington Metro Field Office and as such, I am responsible for conducting criminal investigations involving violations of the Federal Food, Drug, and Cosmetic Act (hereinafter "FFDCA"), Title 21, United States Code, Section 301, *et seq.*, and other statutes enforced by the FDA. As a Special Agent with the FDA, your affiant is also an investigative law enforcement officer of the United States of America within the meaning of Section 2510(7) of Title 18 United States Code.

3. Your affiant has been employed at FDA/OCI since December 2022 and prior to my current assignment, I was employed by the Federal Bureau of Investigation from September 2017 to December 2022. Based on my training and experience in law enforcement, and conversations with other FDA Special Agents and other Law Enforcement Officer, I am familiar with how drugs and medical devices are distributed throughout the supply chain and how they could potentially be tampered with, diverted, or stolen by individuals employed within the supply chain.

4. The facts and information contained in this affidavit are based upon my training and experience, participation in investigations, personal knowledge, and observations during the course of this investigation, as well as the observations of other agents involved in this investigation. All observations were not personally made by me were relayed to me by the individuals who made them or are based on my review of records, documents, and other physical evidence obtained during the course of this investigation. This investigation has been worked jointly with the Virginia State Police ("VSP").

5. This affidavit contains information necessary to support probable cause. It is not intended to include every fact and matter observed by me or known to the United States.

## THE RELEVANT CRIMINAL STATUTE

6. 18 USC §1365 (Tampering) makes the following a crime: Whoever, with reckless disregard for the risk that another person will be placed in danger of death or bodily injury (the term "bodily injury" means a cut, abrasion, bruise, burn, or disfigurement; physical pain; illness; impairment of the function of a bodily member, organ, or mental faculty; or any other injury to the body, no matter how temporary) under circumstances manifesting extreme indifference to such risk, tampers with any consumer product that affects interstate or

foreign commerce, or the labeling of, or container for, any such product, or attempts to do so.

## INTRODUCTION

7. Based on the information set forth below, your affiant submits there is probable cause to believe that between May 2023 and September 2023, in the Western District of Virginia, Dillon BREEDING committed the offense of tampering, when BREEDING knowingly and willingly diverted and tampered with 113 tablets of oxycodone hydrochloride 20mg and 261 tablets of hydromorphone 8mg that were then placed in pre-retail status in stock bottles intended for the use of patients at CVS Health Corporation (CVS) pharmacy, 241 Gateway Plaza, Gate City, Virginia (CVS Gate City) in violation of 18 USC §1365.

## DETAILS

8. On February 5, 2024, your affiant was notified by Task Force Officer (TFO) Special Agent (SA) Aaron Peery of the Virginia State Police (VSP) of a possible tampering of oxycodone hydrochloride from the CVS Health Corporation (CVS) pharmacy, 241 Gateway Plaza, Gate City, Virginia (CVS Gate City). SA Peery informed SA Dobbs of allegations pertaining to a pharmacist named Dillon Breeding who worked at CVS Gate City. BREEDING was suspected of replacing oxycodone hydrochloride 20 mg tablets with

prednisone tablets and putting the bottle with these tablets back into the supply chain that BREEDING had access to as a pharmacist at CVS Gate City. BREEDING, during an interview with CVS Asset Protection, admitted in writing to obtaining by fraud three oxymorphone 40 milligram (mg) tablets, one morphine sulphate 60 mg tablet, 12 oxycodone hydrochloride 30 mg tablets, 261 hydromorphone 8 mg tablets, and 14 oxycodone hydrochloride 20 mg tablets. Additionally, BREEDING's written and signed statement said he took approximately 15-20 tablets while filling prescriptions for patients over the course of six months, thus shorting the patient on their prescription.

9.      On February 20, 2024, your affiant interviewed the District Leader (DL) responsible for CVS Gate City. In mid-November of 2023 DL was informed of a tampering that occurred at CVS Gate City by the CVS Gate City Pharmacy Manager (Pharmacy Manager). Pharmacy Manager informed DL that Pharmacy Manager was filling a prescription of oxycodone hydrochloride when Pharmacy Manager noticed that the stock pill bottles that were stored in pre-retail status in the narcotics safe had been tampered with. Specifically, Pharmacy Manager informed DL that the oxycodone hydrochloride 20 mg had been replaced with prednisone. After this notification, DL visited the store to perform an investigation into the tampering. DL reviewed video surveillance of the store to determine how the oxycodone hydrochloride 20 mg had been

replaced with prednisone. DL determined, based on video evidence that CVS later turned over to law enforcement, that BREEDING filled a stock bottle of oxycodone hydrochloride with prednisone on September 18, 2023. DL stated that he viewed BREEDING switching out the drugs on video during a "cycle count". DL said he viewed BREEDING count 20 prednisone and put them in a bottle that he took out of the trash. DL said he then viewed BREEDING replace the oxycodone hydrochloride with prednisone.

10. DL stated that while he was visiting CVS Gate City another narcotic was discovered to be tampered with. DL said while he was reviewing video when Pharmacist 1 discovered a stock bottle labeled as hydromorphone hydrochloride located in the narcotics safe was discovered to have been tampered with. DL said Pharmacist 1 found the bottles labeled as hydromorphone hydrochloride to contain leflunomide.

11. The next day DL and CVS Asset Protection Manager (Asset Protection Manager) contacted BREEDING and BREEDING voluntarily gave his statement and admitted to tampering with the hydromorphone hydrochloride and oxycodone hydrochloride. Your affiant was provided the signed and witnessed statement made by BREEDING.

12. Your affiant made the following observations based on the signed statement made by BREEDING: BREEDING stated he had been a pharmacist

for approximately four years and began stealing drugs from the CVS Gate City in May of 2023 and continued until his last day working at CVS, October 6, 2023. BREEDING said he would count tablets with a spatula and conceal a tablet in his hand in order to steal the drugs from the pharmacy without a prescription or making payment for them. BREEDING stated he would then take the drugs by mouth "to get through the work day". BREEDING admitted to stealing three tabs of oxymorphone 40 mg, one tab of morphine sulfate 60 mg, two tabs of hydromorphone 16 mg, 12 tabs of oxycodone hydrochloride 30 mg, 14 tabs of oxycodone hydrochloride 20 mg, two tabs of oxycodone hydrochloride 10/325, and 261 tabs of hydromorphone 8 mg. BREEDING also admitted to stealing testosterone 30 mg/1.5 milliliter pump. BREEDING also stated he stole approximately 15-20 tablets when filling prescriptions for patients, shorting the patients on their prescriptions.

13.   On February 20, 2024, your affiant interviewed Pharmacy Manager for CVS Gate City. Pharmacy Manager stated it was a day or two after BREEDING had quit working at CVS Gate City that Pharmacy Manager began noticing multiple stock pill bottles of narcotics being short pills. Pharmacy Manager believed BREEDING had stolen the pills from the stock pill bottles. Pharmacy Manager stated only pharmacists had access to the narcotics safe that the stock pill bottles were stored in.

14. Pharmacy Manager said on or about November 10, 2023, while filling a prescription of oxycodone hydrochloride 20mg Pharmacy Manager noticed that the oxycodone hydrochloride 20mg had been replaced with prednisone 2.5mg. Pharmacy Manager notified DL of this issue as soon as it was discovered.

15. On February 20, 2024, your affiant interviewed Pharmacist 1 that was hired by CVS Gate City to replace BREEDING after BREEDING had resigned. Pharmacist 1 stated that it was on or about November 13, 2023, that Pharmacist 1 found stock bottles of hydromorphone 8mg that had been tampered with. Pharmacist 1 stated these stock bottles were stored in the narcotics safe. Pharmacist 1 noticed different markings on the pills that were supposed to be hydromorphone 8 mg when Pharmacist 1 was about to dispense the pills to a patient. Pharmacist 1 identified the pills as leflunomide. Pharmacist 1 stated that if the intended recipient of this prescription had taken the dosage as prescribed for the hydromorphone 8 mg, it would have exceeded the maximum daily dosage of leflunomide which could have resulted in health complications for the patient.

16. On February 7, 2024, your affiant interviewed the CVS Assistant District Leader (ADL) covering CVS Gate City. ADL stated that Pharmacist 1 was filling a prescription of hydromorphone 8 mg for Patient 1 when

Pharmacist 1 discovered that the pills were leflunomide. ADL said it was fortunate that Pharmacist 1 made this discovery, and that this was the first fill of hydromorphone 8 mg for Patient 1. If Patient 1 had received leflunomide instead of hydromorphone 8 mg Patient 1 would have not received the treatment that Patient 1 needed and would have been exposed to several side effects that could have been dangerous to Patient 1's health. ADL said because of the tampering, CVS Gate City was no longer able to fill Patient 1's prescription and Patient 1 had to go to a different pharmacy.

17. ADL provided law enforcement with two bottles, one labeled as oxycodone hydrochloride 20 mg, manufactured by Mallinckrodt with National Drug Code (NDC) 0406-8520-01. This bottle contained 113 pills, identified as prednisone by Pharmacy Manager and DL (both licensed pharmacists), when it was discovered by Pharmacy Manager on or about November 10, 2023.

18. ADL provided law enforcement with two empty stock bottles labeled as hydromorphone hydrochloride 8 mg, a product of Rhodes Pharmaceutical with NDC 42858-303-01; one bottle labeled as hydromorphone hydrochloride 8 mg containing 81 leflunomide tablets; and one amber vial that was to be used to dispense Patient 1's hydromorphone hydrochloride 8mg containing 180 tablets of leflunomide. The leflunomide was identified by ADL and DL (both licensed pharmacists). The three stock bottles were being used to fill the amber vial for

Patient 1's prescription when it was discovered by Pharmacist 1 that they had been tampered with.

### Interview of Dillon Breeding

19. On or about January 2, 2024, Department of Health Professions (DHP) Investigator Robin Kleene contacted and interviewed BREEDING. BREEDING provided Investigator Kleene with an email written response to the allegations. Below is a summary of this response provided to the investigative team by Investigator Kleene:

   a. BREEDING was a pharmacist for CVS for four years. BREEDING admitted to diverting all medications listed on the complaint that CVS had filed with DHP, except the fourteen bottles of testosterone. BREEDING said he only took one bottle. BREEDING said the first time that he diverted was when he took hydromorphone from bottles after a patient had died. BREEDING said he thought the pills would just sit there stagnant and would be sent back (before being dispensed). BREEDING said the bottles never got sent back so he took some of the pills and ingested them to help his bad back.

   b. BREEDING said he would place prednisone in the oxycodone bottles to keep the count correct.

    c. BREEDING admitted to diverting oxycodone, hydromorphone, testosterone for a period of five months from CVS Gate City.

    d. BREEDING stated all medications he took were from stock bottles.

    e. BREEDING said there were times that he would short patients their medication, but he did not remember the patient's names that he diverted from.

    f. BREEDING stated he would not be renewing his expired license and stated he never sold the medication he diverted.

20. On or about January 19, 2024, Investigator Kleene contacted and interviewed BREEDING in person. Below is a summary of the interview of BREEDING conducted by Investigator Kleene:

    a. BREEDING said the first time he diverted was from a stock bottle of hydromorphone 8 mg in late April or Early May 2023. BREEDING said the hydromorphone 8 mg was ordered for a patient that passed away. BREEDING said once the patient died it was easy to take because the prescription would not be filled. BREEDING replaced the hydromorphone 8 mg that was in the stock bottle (in pre-retail status) with leflunomide 20 mg tablets and took the hydromorphone 8 mg for his personal consumption. BREEDING said hydromorphone 8 mg was not a prescription that was used very often, and he felt it was

highly unlikely to be filled for another patient. BREEDING said he began replacing the hydromorphone in May of 2023.

b. BREEDING said he never filled a prescription for a patient with the wrong medication.

c. BREEDING was shown the video provided by CVS, for September 18, 2023, BREEDING identified himself as the person in the video. BREEDING refused to watch the video showing him diverting the medication. He did acknowledge that was the day he replaced the oxycodone with prednisone. BREEDING's last day working at CVS was September 18, 2023.

   i. BREEDING said he replaced oxycodone from the stock bottle of oxycodone with prednisone on September 18, 2023. BREEDING said that was the day he put in his two-week notice with CVS and also his last day working there.

d. BREEDING said he was not seeking help for addiction because he detoxed independently. BREEDING said he was not taking any opioids and did not want them anymore.

e. Your affiant notes that BREEDING's legal counsel, Dennis Jones, was present for Investigator Kleene's interview.

Origin of Oxycodone Hydrochloride 20 mg from CVS Gate City

21. All the tampered oxycodone hydrochloride 20 mg from CVS Gate City concerning this investigation were manufactured by Mallinckrodt. Mallinckrodt oxycodone hydrochloride 20 mg was manufactured by SpecGx, LLC. SpecGx, LLC has active pharmaceutical ingredient (API) manufacturing facilities in Missouri, Illinois, and North Carolina. SpecGx, LLC ships medications throughout the U.S. Because SpecGX does not manufacture hydrocodone 20mg pills in Virginia, the oxycodone hydrochloride 20mg pills that were tampered with at the CVS Gate City traveled across a state line prior to arriving at the store.

### Origin of Hydromorphone Hydrochloride 8 mg from CVS Gate City

22. All the tampered hydromorphone hydrochloride 8 mg from CVS Gate City concerning this investigation were manufactured by Purdue Pharma L.P. and marketed by Rhodes Pharmaceutical. Purdue Pharma L.P. has a manufacturing facility in Wilson, North Carolina and is headquartered in Stamford, Connecticut. Purdue Pharma L.P. ships medications throughout the U.S. Because Purdue Pharma L.P. does not manufacture hydromorphone hydrochloride 8 mg pills in Virginia, the hydromorphone hydrochloride 8 mg pills that were tampered with at the CVS Gate City traveled across a state line prior to arriving at the store.

## Risk of Bodily Injury

23. Based on my training and experience and consultation with a pharmacist, I am aware that tampering with oxycodone hydrochloride and hydromorphone hydrochloride as set forth above places persons who receive the medication in danger of death or bodily injury.

24. Oxycodone hydrochloride and hydromorphone hydrochloride are pain medications and giving someone leflunomide or prednisone when oxycodone hydrochloride or hydromorphone hydrochloride was prescribed would likely result in the person experiencing physical pain. Also, the introduction of prescription drugs not prescribed, such as leflunomide or prednisone, could cause serious health concerns or even death. In addition, if a health care provider believed a person was receiving oxycodone hydrochloride or hydromorphone hydrochloride but was not experiencing the appropriate pain relief (as likely would be the case if the person was, in fact, receiving leflunomide or prednisone) the health care provider could misdiagnose the patient and undertake other procedures, including surgery, that would otherwise not be done.

## CONCLUSION

25. Based on the above described facts and circumstances, and upon your affiant's training, knowledge, and experience, your affiant submits there is

probable cause to believe that between May 2023 and October 2023, in the Western District of Virginia, Dillon Breeding committed the offense of Tampering.

Signed and sworn to this ___7th___ day of March, 2024

_____
Dustin Dobbs
Special Agent

Subscribed and sworn to before me this ___7th___ day of March, 2024

_____
The Honorable Pamela Meade Sargent
United States Magistrate Judge